IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

THEODORE SCOTT INMAN           )
      Plaintiff,            )
                            )
   v.                       )  Civil Action No. 03-1189
                            )
FEDERAL EXPRESS LONG TERM      )
DISABILITY PLAN and FEDERAL    )
EXPRESS CORPORATION.           )
      Defendants.           )

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Gary L. Lancaster,
District Judge.                              September 18, 2006

    This is an action brought under the Employee Retirement Income Security Act, 29 U.S.C. § 1001 et seq. Plaintiff, Theodore Scott Inman, who was a Federal Express employee insured under the Federal Express Long Term Disability Plan ("Plan"), alleges that defendants, Federal Express Long Term Disability Plan and Federal Express Corporation, improperly denied him benefits under the Plan. Plaintiff asserts that he has been, and continues to be, wholly and continuously disabled throughout the relevant time period. Defendants deny that plaintiff meets the definition of "disabled" under the terms of the Plan. Plaintiff seeks equitable relief as well as costs and fees.

    On September 6, 2006, the matter was submitted to a bench trial. Both sides presented documentary evidence and oral argument at trial. The court is now prepared to set forth its

findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure. For the reasons set forth below, the court finds in favor of defendants.

I. FINDINGS OF FACT

The following facts are not in dispute:

1. Plaintiff began working for defendant Federal Express as a project engineer/service engineer on November 27, 1978.
2. As a permanent full-time employee, plaintiff was a covered employee under the Federal Express Corporation Long Term Disability Plan (the "Plan").
3. Federal Express is the Administrator of the Plan.
4. At all relevant times, Kemper National Services, Inc. ("Kemper"), was the Claim Administrator for the Plan.
5. Plaintiff became disabled in early 2000 and received short term disability benefits for major depression and a sleep disorder for approximately six (6) months, from March 16, 2000 to September 13, 2000.
6. Plaintiff then received long term disability benefits for an Occupational Disability under the Plan from September 14, 2000 to September 13, 2002.

7. The Plan defines Occupational Disability, in relevant part, as:

   <u>Occupational Disability</u> shall mean the inability of a Covered Employee, because of a medically-determinable physical impairment or Mental Impairment (other than an impairment caused by a Chemical Dependency), to perform the duties of his regular occupation. Plan § 1.1 (u).

8. A Federal Express employee may receive Occupational Disability benefits for up to two years if he cannot perform the duties of his own occupation. To receive long term disability benefits from the Plan for longer than two years, a Disabled Covered Employee must be "Totally Disabled."

9. The Plan defines Total Disability as:

   <u>Total Disability</u> shall mean the complete inability of a Covered Employee, because of a medically-determinable impairment (other than an impairment caused by a mental or nervous condition or a Chemical Dependency), to engage in any compensable employment for twenty-five hours per week for which he is reasonably qualified (or could reasonably become qualified) on the basis of his ability, education, training, or experience. Plan § 1.1 (gg).

10. The Plan grants discretionary authority to the Federal Express Benefits Review Committee:

    <u>Authority of Committee</u>. The Committee, appointed pursuant to Subsection (c), shall be empowered to interpret the Plan's provisions in accordance with its terms with respect to all matters properly brought before it pursuant to this Section 5.3, including, but not limited to, matters relating to the eligibility of a claimant for benefits under the Plan. The determination of the committee shall be made in a fair and consistent manner in accordance with the Plan's terms and its decision shall be final, subject only to a determination by a court of competent jurisdiction that the committee's decision was arbitrary and capricious. Plan § 5.3(d).

11. On August 5, 2002, plaintiff received a letter from the Plan's Claim Administrator, Kemper, indicating that plaintiff did not meet the definition of total disability under the Plan and his benefits would cease on September 13, 2002.

12. Plaintiff appealed the denial of benefits on September 23, 2002.

The following facts are in dispute, but the court finds, by a preponderance of the evidence, as follows:

13. The Benefits Review Committee reviewed plaintiff's appeal on January 8, 2003. The committee examined plaintiff's medical records and appeal letter, which outlined plaintiff's basis for believing benefits were wrongfully denied. The committee noted that Kemper's physicians determined plaintiff did not meet the Plan's definition of total disability from a medically determinable physical disability. The committee determined that the available clinical information was inadequate to conclude that plaintiff was unable to engage in any compensable employment for twenty five hours per week.

14. Plaintiff received a letter on January 14, 2003 from the Benefit Review Committee affirming the denial of long term disability benefits past September 13, 2002.

15. In its denial letter, the committee explained that it based its decision on all information submitted and Kemper's physician reviews performed on 5/31/02, 6/4/02, 6/6/02, 6/10/02, 6/11/02, 7/3/02 and 11/26/02. The medical reviews by Kemper were performed by

5

specialists in Rheumatology, Neurology, Psychology and Pulmonary/Internal Medicine. The physicians found Plaintiff capable of working five (5) hours per day. A Functional Capacity Evaluation indicated that plaintiff's efforts were unreliable and inconsistent and there was no evidence of a consistent fatigue pattern. It also demonstrated that plaintiff was capable of light level work. Plaintiff's neurologist noted that afer adjustment and changes in his medications and dosages, plaintiff's headaches noticeably improved and he had no significant side effects from the medications. An Independent Neuropsychological Assessment was performed and it indicated that plaintiff had demonstrated no significant cognitive impairment. The Committee noted that Plaintiff had a sleep study with Bi-Pap titration, which he tolerated well and that it eliminated most of his sleep disorder. Based on this information, the Committee concluded that the data did not objectively demonstrate a functional impairment which would preclude plaintiff from performing any compensable occupation for a minimum of 25 hours per week.

II. <u>CONCLUSIONS OF LAW</u>

1. This action, to reinstate long term disability benefits under defendant's benefits plan, is governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C.A. § 1001 <u>et</u> <u>seq</u>.

2. The Court has original jurisdiction pursuant to 28 U.S.C.A. § 1331 and 29 U.S.C.A. § 1132(e).

3. When as here, a plan administrator has the discretionary power to construe the terms of a plan or to determine who is eligible for benefits, the court will review the administrator's decision according to an "arbitrary and capricious" standard. <u>See</u> <u>Stoetzner v. United States Steel Corp.</u>, 897 F.2d 115, 119 (3d Cir. 1990).

4. Under the arbitrary and capricious standard, the court will overturn an administrator's decision only if it is "'without reason, unsupported by substantial evidence or erroneous as a matter of law.'" <u>Abnathya v. Hoffman-La Roche, Inc.</u>, (2 F.3d 40, 45 (3d Cir. 1993) (citations omitted).

5. As this court previously decided in its July 14, 2005 Memorandum Order, the facts of this case require that the standard of review be heightened to the "far end of the arbitrary and capricious 'range.'" <u>Pinto v.</u>

<blockquote>Reliance Standard Life Ins. Co., 214 F.3d 377, 394 (3d Cir. 2000).</blockquote>

6. In applying a heightened arbitrary and capricious review, the court is "deferential, but not absolutely deferential.... Therefore we look not only at the result- whether it is supported by reason - but at the process by which the result was reached." Id. at 393.

7. Plaintiff alleged that Kemper controlled the expert medical opinions of reviewing physicians by limiting the scope of medical examinations and limiting the scope of the expert opinions sought. Plaintiff further argued that the only review arranged by Kemper which considered all his medical problems, by Dr. Aron Neuhaus, M.D., concluded he was disabled but that once Kemper limited the examination to pulmonology alone, that finding of disability was reversed. However, a close review of the record shows that the follow-up review by Dr. Neuhaus was limited only to whether plaintiff had a functional impairment which would render him unable to work a minimum of 25 hours per week at any compensable occupation. Based on the Plan's definition of "total disability," that is indeed the appropriate "limitation" to make. Dr. Neuhaus found

that plaintiff could perform sedentary work for twenty five hours a week.

8. Dr. Neuhaus was not the only physician to conclude that plaintiff was not "totally disabled" as defined by the Plan. An October 21, 2002 report by Vocational Rehabilitation Consultant Samuel Edelmann submitted by plaintiff's attorney for the benefits committee's review concluded that plaintiff would be limited to sedentary work, although he questioned whether plaintiff would be a reliable employee based on work days he might miss due to migraines. Contrastingly, an October 25, 2002 letter that plaintiff submitted from Dr. Kaniecki reported that plaintiff's migraines were generally controlled. Finally, a November 26, 2002 General Peer Review Addendum performed by Dr. Cohan noted and addressed each of plaintiff's diagnoses, i.e. fybromyalgia, cervical spondylosis, chronic headaches, major depression, hypersomnolence, hypogonadism, carpal tunnel syndrome, obesity, sleep apnea and hyperthyroidism. Dr. Cohan likewise concluded that the medical documentation did not substantiate "that a functional impairment exists that would preclude the claimant from engaging in any compensable employment for a minimum of twenty-five (25) hours per week."

9. After reviewing the process that defendants used in evaluating plaintiff's disability claim under the heightened arbitrary and capricious standard, it cannot be said that defendants acted arbitrarily or capriciously. Although there was sufficient evidence that plaintiff had an "occupational disability" and could not work in his own profession, plaintiff failed to meet his burden of proving that he is "totally disabled" as defined by the disability benefits plan. There is substantial evidence supporting the benefits review committee's decision that plaintiff is capable of working a sedentary job for at least twenty-five (25) hours per week.

10. Judgment shall be entered in favor in defendants.

BY THE COURT:

/s/ [signature], J.

cc: All Counsel of Record